Entered on Docket
March 28, 2013
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: March 27, 2013

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 11-30246 TEC |
| SCOTLAND-COLORADO, LLC, | ) Chapter 11 |
| Debtor. | ) |

**MEMORANDUM DECISION RE OBJECTION TO
FINAL FEE APPLICATION OF DEBTOR'S COUNSEL**

On February 22, 2013, the court held a hearing on the final fee application of Debtor's counsel, the Bloomfield Law Group, Inc. (Bloomfield). Neil Jon Bloomfield appeared for applicant. Matthew Mellen appeared for the sole members of the Debtor, who objected to allowance of any fees. Upon due consideration, and for the reasons stated below, I determine that Bloomfield should be awarded $115,460 for fees and expenses incurred as counsel for the Debtor is this chapter 11 case.

**FACTS**

Debtor is an LLC, whose sole members are a married couple, Robert Howie and Brenda Hally (the Howies). Debtor's principal assets consist of heavily encumbered real property, including an interest in the Howies' residence. Debtor filed a chapter 11

MEMORANDUM DECISION RE OBJECTION
TO FINAL FEE APPLICATION     -1-

petition in January 2011 to stop a foreclosure on one of those properties. In its schedules, Debtor listed the following properties: (a) three single-family rental homes in Colorado, each with equity of $13,000 or less; (b) vacant land in Lodi, California valued at $300,000 and subject to secured debt of $620,000; (c) a warehouse in Oakland, California valued at $400,000 and subject to secured debt of $887,000; and (d) an unspecified percentage interest in the Howies' residence (the Residence), which property was valued at $2 million and subject to secured debt of $2.7 million. The junior encumbrances on the Lodi and Oakland properties had been guaranteed by the Howies.

    Neither Debtor nor the Howies had sufficient income to pay full debt service going forward on the Lodi property, the Oakland property, or the Residence. Robert Howie is an experienced trial lawyer. He participated actively with Bloomfield in developing a strategy for saving the properties. The basic approach they decided upon was to rely upon the automatic stay to stop collection, and hope that the real estate market would recover, that Robert Howie's income would increase, and/or that lenders would renegotiate various loans on terms favorable to Debtor.

    Bloomfield prepared four different reorganization plans, none of which were confirmed. The Debtor and the Howies were able to resolve some of their financial difficulties without confirming a plan. They were able to keep the Colorado properties, none of which had been seriously in default. They were also able to obtain a release of the personal guarantee executed by the Howies, by surrendering the Lodi and Oakland properties to the lender. They were not, however, able either to confirm a plan restructuring the

debt on the Residence or to reach an agreement with the senior lender that would enable them to keep the Residence. It is the failure to save the Residence that is the source of the Howies' dissatisfaction with Bloomfield.

It is difficult to see how the Residence could ever have been saved. At the time Debtor filed its chapter 11 petition, the arrears under the senior loan against the Residence were $88,000. Neither Debtor nor the Howies had sufficient income to make regular debt-service payments going forward, let alone cure the large arrearage. Robert Howie hoped that the delay created by the automatic stay would induce the senior lender voluntarily to modify the loan and/or that the income from Robert Howie's law practice would rise sufficiently to fund resumption of payments. Neither happened.

Title to the Residence was in the name of the Howies at the time Debtor filed its chapter 11 petition. It was Robert Howie who suggested that Debtor had an interest in the Residence. He told Bloomfield that part of the purchase price had been paid with Debtor's funds. That the Debtor claimed an ownership interest in the Residence meant that the Residence was protected by the automatic stay without the Howies having to file bankruptcy themselves. A one-half interest in the Residence was formally conveyed to Debtor post-petition.

Debtor and the Howies would have faced great obstacles in reinstating the loans on the Residence, whether ownership was shared by the Howies and Debtor, or whether title was held by the Howies alone. Chase (the holder of the senior loan against the Residence) successfully objected to confirmation of a plan

MEMORANDUM DECISION RE OBJECTION
TO FINAL FEE APPLICATION           -3-

proposing to restructure the senior debt on two grounds: that Debtor's plan could not modify the obligations of non-debtors (the Howies); and that the plan was not filed in good faith, because the Howies' post-petition transfer to Debtor was an inappropriate attempt to avoid the bar on modification of debt secured only by their principal residence. 11 U.S.C. § 1123(b)(5). The Howies contend that they were harmed by Bloomfield failing to warn them not to transfer the Residence to Debtor. But the Howies would have been precluded by section 1123(b)(5) from modifying their obligation to Chase even if they had retained full title to the Residence and filed their own bankruptcy petition. They would have been permitted to cure the arrearage while they made regular payments going forward, but they lacked sufficient income to do so.

Bloomfield seeks allowance of total fees and expenses in the amount of $152,291. That amount includes $86,716 in fees and expenses awarded on Bloomfield's first interim fee application, of which Debtor has paid $61,432. Bloomfield seeks an additional $65,875 in fees and costs in this final application. He represents that the amount presently requested incorporates a voluntary write-off of $71,535.

The Howies contend that Bloomfield should be denied all fees. They first contend that Bloomfield committed malpractice by giving the couple bad advice as to how to save the Residence. The Howies contend that Bloomfield had an attorney-client relationship with them, as well as with the LLC. They contend that they made known to Bloomfield that their first priority was to save the Residence. They contend that Bloomfield breached the standard of care in advising them to transfer the Residence to Debtor post-petition.

The Howies also contend that the fee sought is unreasonably large in light of the nature of the case and the results achieved.

**ALLEGED MALPRACTICE**

The Howies' argument that the requested fees should be disallowed because Bloomfield committed malpractice is unpersuasive for four reasons.

First, Bloomfield seeks fees for services performed for the LLC. The breach of duty alleged was to the Howies personally, not to the LLC. The Howies allege that a one-half interest in the Residence should not have been transferred to the LLC, and it is the likely loss of the Residence that constitutes the damage alleged. The Howies make no meaningful allegations that Bloomfield gave bad advice regarding the affairs of the LLC, and it is plain that the chapter 11 case achieved results favorable to the LLC: the preservation of all of the rental properties in Colorado, and the release of the debts against the Lodi and Oakland properties.

Second, neither the Howies nor the LLC had any equity in the Residence. The schedules signed by the Howies under penalty of perjury indicate that as of the petition date the value of the Residence was $2 million and the total of the secured loans against the property was $2.7 million. The Howies had no equity in the Residence even if the third-priority encumbrance is ignored (the secured guarantee that was eventually released).

Third, the likely loss of the Residence was not proximately caused by Bloomfield's actions. This is so because the Howies did not have the means to propose a plan more likely to enable them to retain the Residence. The Howies contend that Bloomfield should have advised them to propose a plan under which they would cure the

existing defaults over the term of the plan. Bloomfield did not propose such a plan because Robert Howie made clear that they could not fund such a plan. Under such a plan, the Howies would have been required to make all regular monthly payments going forward and, in addition, pay off arrears that the Howies estimated to be $88,000. Robert Howie informed Bloomfield at the outset of the case that they were unable to make even the regular payments.

> The other goal is to maximize the chance for a real loan modification on a *house/residence that is now too expensive*. We discussed involving the house in a Chapter 11 on Scotland Colorado LLC by deeding a 1/2 interest to the LLC. Do we know how this would affect a loan modification process? Do you still think this idea has any legs? Does any faith in a loan modification have any legs? *There is some modest value in maximizing the delay in the Chase foreclosure on the house in that we are living there for now without cost.*

Email from Robert Howie to Bloomfield December 31, 2010 (emphasis added). Moreover, the opportunity to propose such a "cure" plan has not been lost. Statements by counsel for the lender holding the loans on the Residence suggest that the lender is still open to a plan under which the Residence would be transferred back to the Howies and the Howies would cure the arrears over time. The reason the Howies cannot keep the house is that they do not have sufficient income to pay off the debt against the house, even if they are allowed to cure arrears over time.

Fourth, Bloomfield pursued a strategy that was suggested by Robert Howie (who is an experienced trial attorney), and that was probably the most likely to achieve a favorable outcome in the difficult circumstances in which the Howies and the LLC found themselves. The filing of the chapter 11 case by the LLC stopped all foreclosure proceedings against the Residence for almost two

years. Robert Howie hoped that during this delay the value of the properties might rise and/or that the delay would induce his lenders to alter the terms of their loans.

> My thinking is that the estate has very little equity and that the only two reasons for this effort are to see if I can pay legal expenses in place of the rental cost of a good home AND delay losing these "assets" until there is a shift upward in value or I can get te [sic] debt decreased to a point that there is some equity in the estate that will offset the cost of the legal effort.

Email from Robert Howie to Bloomfield December 29, 2010. This is a strategy pursued by many experienced bankruptcy counsel.

For the reasons set forth above, the court declines to deny or reduce fees on the basis that Bloomfield breached any duty of care to his client.

**WHETHER AMOUNT SOUGHT IS REASONABLE**

The relevant test is whether the fees sought constitute a reasonable and necessary expense of administration. Whether the services performed were necessary must be viewed from the time they were performed, not in hindsight. I determine that Bloomfield actually spent the time claimed, and that the hourly rate ($365-375) was reasonable. The remaining question is whether the amount of time spent and the particular services performed were reasonable and necessary in light of the nature of the case, and whether any adjustment should be made to take account of the results achieved.

In determining the amount of fees to be awarded in this case, I consider in particular the following factors.

First, the case was in most respects quite simple. Rental income was sufficient to enable Debtor to retain and reinstate the three Colorado properties. The remaining properties (Lodi, Oakland, and the Residence) had no equity and insufficient income

to pay debt service.  Debtor used the delay caused by the chapter 11 case to cause the lender against the Lodi and Oakland properties to accept the surrender of those properties in exchange for a release of the guarantee executed by the Howies.  Neither of these aspects of the case warranted services in the amount Bloomfield provided.  Attempting to keep the Residence presented a very complex problem.  Neither Debtor nor the Howies had sufficient income to cure the default.  With the Residence in the Howies' name, the loan could not be modified because of section 1123(b)(5). The loan could not be modified with Debtor holding only a one-half interest, because a plan cannot modify the obligations of a non-debtor.  11 U.S.C. § 524(e).  Bloomfield spent much of his effort trying to confirm a plan that could not be confirmed.  This factor warrants a significant downward adjustment from the amount sought.

    Second, Bloomfield's efforts failed to achieve one of the Debtor's most important objectives: restructuring the debt encumbering the Residence in which it held a one-half interest. But it should be remembered that the hope for keeping the Residence was based in part on Robert Howie's expectation that the income from his law practice would increase, which, if it had happened, might have enabled Debtor and the Howies to reinstate the loan by curing the default.  Finally, as noted above, Debtor did not lose any meaningful opportunity to keep the Residence because of any act of Bloomfield.  The most that can be said is that Bloomfield expended an unreasonable amount of time pursuing a too-creative course of action that offered only a small chance of saving the Residence.  In substance, this factor merges with the first.

    Third, the services performed provided substantial benefit to

**MEMORANDUM DECISION RE OBJECTION TO FINAL FEE APPLICATION** -8-

the Debtor and to the Howies, who are the only parties who have objected to the allowance of the requested fees. Debtor was able to hold onto the three Colorado properties, which according to Debtor increased in value during the pendency of the case and now have substantial equity. Debtor was able to obtain the release of debts that had been guaranteed by the Howies through the surrender of properties in which Debtor had no equity. Finally, through Bloomfield's efforts to confirm a plan, the case was not dismissed or converted, the automatic stay remained in effect with respect to the Residence, and the Howies were able to continue to occupy the Residence for more than 18 months without making any payments. The rental value of this use was likely about $100,000 (18 months x $6,000 per month). This outcome was entirely consistent with Robert Howie's hope to "pay legal expenses in place of the rental cost of a good home." Id. This factor mitigates the downward adjustment indicated above.

Fourth, Bloomfield did a very competent job of ensuring that Debtor filed monthly operating reports, obtained authority to use cash collateral, filed status conference statements, and responded to deadlines set by the court. This factor also mitigates the downward adjustment indicated above.

Taking into account all the facts and circumstances of the case, I determine that the fees sought by Bloomfield should be reduced by 25 percent, and that the claimed expenses should be allowed in full.[1] This is a final award and is intended to

---

[1] The court recognizes that Bloomfield has voluntarily written off a substantial number of hours. The 25-percent reduction from the amount claimed after that write-off is based on a determination of what the case reasonably required, not the number of hours expended by Bloomfield.

**MEMORANDUM DECISION RE OBJECTION**
**TO FINAL FEE APPLICATION**           -9-

compensate Bloomfield for all services to date, including the preparation and defense of the present fee application. The resulting allowed claim of $115,460 is an administrative priority claim enforceable only against Debtor's bankruptcy estate, of which $54,028 remains unpaid.[2]

Because Bloomfield, as counsel for debtor in possession, is an officer of this court, he cannot be sued for malpractice arising out of his representation of Debtor without permission of this court. See <u>Allard v. Weitzman (In re DeLorean)</u>, 991 F.2d 1236, 1241 (6th Cir. 1993). Because this court has rejected the claims of malpractice asserted on behalf of Debtor in determining Bloomfield's fees, any such claim of Debtor is very likely barred under principles of issue preclusion. See <u>Grausz v. Englander</u>, 321 F.3d 467 (4th Cir. 2003).

**\*\*END OF MEMORANDUM DECISION\*\***

---

[2] The unpaid allowed claim is calculated as follows: $147,328 (fees sought) x .75 = $110,496 (allowed fees) plus $4,964 (expenses sought) minus $61,432 (amount already paid) = $54,028 (balance due).

MEMORANDUM DECISION RE OBJECTION
TO FINAL FEE APPLICATION              -10-

## Court Service List

Mellen Law Firm
Attn: Matthew Mellen, Esq.
411 Borel Ave., #230
San Mateo, CA 94402

Scotland-Colorado, LLC
1777 Borel Place Suite 1000
San Mateo, CA 94402